IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ASH NARAYAN, THE TICKET RESERVE, INC. a/k/a FORWARD MARKET MEDIA, INC., RICHARD M. HARMON, and JOHN A. KAPTROSKY,<br><br>Defendants. | Civil Action No. 3:16-cv-1417-M |

## PLAN OF DISTRIBUTION

After considering the Receiver's Motion to Approve a Plan of Distribution [Dkt. No. 215], along with the evidence presented, the arguments of counsel and applicable law, the Court finds that the Motion should be granted.

Therefore, the Court adopts the following plan of distribution:

### I.  DEFINITIONS

Capitalized terms shall have the meanings set forth below.  Any term not otherwise defined herein, but used in the Order Appointing Receiver [Dkt. No. 12] or the Order Establishing Claims Resolution Procedure and Setting a Bar Date [Dkt. No. 204] will have the meaning given that term in such Orders.

1. "**Administrative Expense**" means the reasonable and necessary costs and expenses of administration of the receivership, including without limitation, fees incurred by the Receiver, his counsel, his accountants, or the Special Receiver.

2. "**Allowed Claim**" means a claim that

   a. has been listed on the Schedule as other than disputed, contingent, or unliquidated and is not otherwise a Contested Claim; or

   b. is allowed: (i) in any stipulation of amount and nature of claim executed by the Receiver and a claimant and approved by the Court; or (ii) by order of the Court.

  3. **"Distribution Funds"** means the cash held by the Receiver and available, after paying: (i) Administrative Expenses; and (ii) withholding reserves as allowed herein, for distribution to holders of Allowed Claims pursuant to this Plan.

  4. **"FMM"** means Forward Market Media, Inc., a Delaware corporation.

  5. **"General Claim"** means an Allowed Claim arising out of the provision of services, the sale of goods or the loan of money to a Receivership Entity other than an Investor Claim.

  6. **"Investor"** means the holder of an Investor Claim.

  7. **"Investor Claim"** means an Allowed Claim arising out of an investment or attempted investment in securities sponsored or promoted by TTR or FMM.

  8. **"IRS"** means the Internal Revenue Service.

  9. **"Plan"** means this Plan of Distribution and all exhibits and schedules referenced herein, as the same may be amended, modified, or supplemented.

  10. **"Pro Rata"** means with respect to a holder of an Allowed Claim, the ratio of (i) the amount of the Allowed Claim to (ii) the aggregate amount of all Allowed Claims plus an amount estimated by the Receiver for Contested Claims in the respective Distribution Class.

  11. **"Receiver"** means Michael D. Napoli, in his capacity as the court appointed receiver.

  12. **"Receivership Asset"** has the meaning given it in the Receivership Order.

  13. **"Receivership Entities"** means TTR; FMM; Rights Acquisition; and each of them.  Any one of them is a "**Receivership Entity**."

  14. **"Receivership Order"** means the Order Appointing Receiver [Dkt. No. 12] as modified by this Court from time to time including by the Order Granting Receiver's Motion to Expand Receivership [Dkt. No. 25].

  15. **"Rights Acquisition"** means Rights Acquisition Group, LLC, a Delaware limited liability company.

  16. **"Securities Act"** means the Securities Act of 1933, as amended, including the rules and regulations adopted pursuant thereto.

17. "**ShooWin Shares**" means 666 shares of common stock of ShooWin, Inc., a Delaware corporation.

18. "**Special Receiver**" means Ferdose al-Taie, in her capacity as the court appointed special receiver.

19. "**TTR**" means Ticket Reserve, Inc., an Illinois corporation.

## II. CLAIMS AGAINST THE RECEIVERSHIP

### A. Administrative Expenses

The Court has approved (i) the Receiver's First through Seventh Fee Applications [Dkt. Nos. 115, 123, 148, 183, 192, 205 and 213] and (ii) the Special Receiver's Fee Application [Dkt. No. 211] and confirms that the requested fees were reasonable and necessary. The Court, thus, confirms its award of fees and expenses for the Receiver, the Special Receiver and their professionals in the amount of $926,508.96 and directs the Receiver to pay them to the extent that he has not already done so. The court also reserves $12,711.94 for closing expenses. This is the Court's final determination as to professional fees.

### B. Claims by the IRS

The IRS filed a proof of claim with the Receiver relating to TTR's obligation to pay payroll taxes. The Receiver listed the IRS's proof of claim as disputed with an allowed amount of zero dollars on the First Amended Schedule of Claims (Dkt. No. 210-1) and provided the required notice to the IRS as set forth in this Court's Claims Order (Dkt. No. 204). The IRS did not object to the Receiver's treatment of its claim. Accordingly, the IRS has waived its objection and its proof of claim is denied.

In addition, the Receiver has filed all federal income tax returns due through tax year 2018 and has paid any income tax due.

Accordingly, the Court finds that the Receiver owes nothing to the IRS and the IRS is not entitled to a distribution from the Receivership Assets.

### C. Investor Claims

The Court allows the claims of the Investors as set forth on the Final Claims Schedule (Dkt. No. 215-2).

### D. Other claims

Because there are not sufficient assets to pay all of the Investor Claims, the Court will not resolve any contests as to General Claims at this time.

### E. Approval of Final Claims Schedule

The Court hereby approves the Final Claims Schedule (Dkt. No. 215-2).

## III. ASSETS FOR DISTRIBUTION

The Court finds that all of the Receivership Assets currently held by the Receiver and Special Receiver (including presently existing causes of action not reduced to judgment) are subject to a constructive trust in favor of the Investors as a group. The Receivership Defendants held all funds contributed by Investors in constructive trust. This constructive trust was imposed by operation of law and attached at the moment legal title to the funds was transferred from the Investors to the Receivership Entities. It applies to the funds and their proceeds currently held by the Receiver.

After payment of Administrative Expenses and reserves (as set forth above), the Court finds that the Receiver has Distribution Funds available in the amount of $621,467.87. In addition, the Receiver holds the ShooWin Shares, which are also available for distribution.

## IV. TREATMENT OF CLASSES

### A. Distribution Classes.

The Receivership Assets will be distributed in the following order of priority:

1. Distribution Class 1 – Investor Claims

2. Distribution Class 2 – General Claims

### B. Secured Claims

There are no secured claims. No party holds a lien on any or all of the Receivership Assets.

## V. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions to Classes

1. Distributions to Distribution Class 1 – Investor Claims

The Receiver shall pay the available Distribution Funds and distribute the ShooWin Shares on a Pro Rata basis to the Investors as set forth in Dkt No. 215-1..

4

       2.      Distributions to Distribution Class 2 – General Claims

If all Allowed Claims in Distribution Class 1 are paid in full or adequate reserves are held, the Receiver shall pay the available Distribution Funds on a Pro Rata basis to the holders of General Claims up to the full amount of the Allowed Claim of each such person. The Receiver may hold back in reserve such sums as he may deem reasonably necessary, in the exercise of his sole discretion, to satisfy all Distribution Class 2 Contested Claims not previously resolved. Unless additional Distribution Funds become available, there will be no distribution to this Distribution Class.

**B.**    **Delivery of Distributions**

The Receiver will distribute the Distribution Funds to holders of Allowed Claims by checks drawn on a domestic bank selected by the Receiver at the addresses set forth on the respective proofs of claim filed by holders of such Claims.

The Receiver shall conclude the distribution of the ShooWin Shares by delivering a copy of the Plan to ShooWin, Inc. along with a letter informing ShooWin that the Court has: (i) distributed the ShooWin Shares as set forth herein; and (ii) instructed the Receiver to notify ShooWin of the distribution so that it may reflect the corresponding transfer and assignment on its books and records and issue the corresponding shares, subject to its governing documents and the General Corporate Law of Delaware.

**C.**    **Compliance with Tax Requirements**

Notwithstanding any other provision of the Plan, each Person receiving a distribution of cash or assets pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding, and other tax obligations.

**D.**    **Undeliverable Distributions**

If any distribution to a holder of an Allowed Claim is returned to the Receiver as undeliverable and the holder of such undeliverable distribution fails to provide the Receiver with a current address within 30 days of the date of distribution, then the Receiver is to seek further instruction from the Court.

## VI.    NO DISCHARGE OF CLAIMS

This Plan does not discharge, settle or otherwise resolve any claim against any person other than the Receiver. The Plan does, however, provide the sole method by which the Receivership Assets will be distributed and by which any person may be paid by the Receiver, except as may be separately ordered by the Court.

## VII. OTHER ORDERS

Except as specifically stated herein, the Receivership Order and all other Orders entered by the Court are not modified by this Plan and remain in full force and effect to the extent not previously modified by the Court.

**SO ORDERED** this 1st day of October, 2019.

_____
Barbara M. G. Lynn
Chief United States District Judge